JOON S. MOON; AND PATTERSON LABORATORIES, INC., A MICHIGAN CORPORATION, APPELLANTS, *v.* McDONALD CARANO WILSON LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP; WILLIAM A.S. MAGRATH; AND JOHN J. LAXAGUE, RESPONDENTS.

No. 51124

December 16, 2010                    245 P.3d 1138

*Carl M. Hebert*, Reno, for Appellants.

*Piscevich & Fenner* and *Margo Piscevich*, Reno, for Respondents.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we address the interaction of NRCP 16.1 mandatory pretrial discovery requirements with the Nevada Arbitration Rules. Specifically, we determine whether cases not automatically exempted from the court-annexed arbitration program by designation on the initial pleading, which are ultimately exempted from the program by the arbitration commissioner under the procedures outlined in NAR 5(A), are actually in the program during the time prior to their exemption and are thus not subject to the requirements of NRCP 16.1 during this time period. We conclude that cases are not actually in the court-annexed arbitration program until they are assigned to an arbitrator, or ordered or remanded into the program by the district court. As a result, such cases that are awaiting exemption are not actually in the program during the period prior to exemption, and thus, we hold that the deadlines and requirements of NRCP 16.1 continue to apply during this time period.

### BACKGROUND

On November 3, 2006, appellants Joon S. Moon and Patterson Laboratories, Inc., filed their district court complaint against respondents McDonald, Carano & Wilson, LLP; William A.S. Magrath; and John J. Laxague. Respondents jointly filed their answer to the complaint on January 10, 2007. On March 29, 2007, the arbitration commissioner entered an order exempting the case from the mandatory court-annexed arbitration program on the

basis that its probable jury award value exceeded the jurisdictional threshold set by rule.

On November 6, 2007, respondents moved to dismiss appellants' complaint, arguing, among other things, that appellants had failed to comply with NRCP 16.1(e)(2), which authorizes the dismissal of a complaint, without prejudice, as a sanction for failing to timely file a case conference report. Appellants subsequently filed an individual case conference report on November 21, 2007, and opposed the motion to dismiss, claiming that they had timely complied with NRCP 16.1(e)(2). On January 14, 2008, the district court entered an order granting respondents' motion to dismiss. This appeal followed.

## DISCUSSION

This court reviews a district court's dismissal of a case for failure to comply with the requirements of NRCP 16.1(e)(2) for an abuse of discretion. *Arnold v. Kip*, 123 Nev. 410, 414, 168 P.3d 1050, 1052 (2007). A district court's interpretation of court rules is reviewed de novo. *Marquis & Aurbach v. Dist. Ct.*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006).

NAR 3(A) provides that any civil case commenced in the district court that has a ''probable jury award value not in excess of $50,000 per plaintiff, exclusive of interest and costs, . . . [is] subject to the [court-annexed arbitration] program,'' unless it falls into one of the enumerated categories excluded from the program by that rule.[1] A party claiming exemption under certain of the enumerated categories may be automatically excluded from the program by expressly designating the reason for exemption on the initial pleading filed in district court. NAR 5(A). Cases not eligible for automatic exclusion from the program can only be exempted if a request for exemption is granted by the arbitration commissioner or, if denied by the commissioner, by the district court after an objection to the commissioner's ruling has been filed.[2] NAR 5.

This appeal presents an important procedural issue of first impression with regard to those cases not automatically excluded from the program by designation on the initial pleading, which are ultimately exempted from the program by the arbitration commis-

---

[1]*See* NAR 3(A) (delineating which cases are, and are not, eligible for exemption from the court-annexed arbitration program).

[2]If a party whose case is eligible for automatic exclusion fails to designate the basis for exemption on the initial pleading, then that case can only avoid arbitration if it is exempted from the program by the arbitration commissioner or the district court. NAR 5(A).

sioner or the district court under the procedures outlined in NAR 5(A). In particular, this case requires that we determine whether the deadlines and requirements of NRCP 16.1, including NRCP 16.1(e)(2)'s deadline for filing a case conference report, apply and begin to run during the time prior to the arbitration commissioner's or district court's grant of the exemption request.

Relevant to this determination, NRCP 16.1(b)(1) provides that the parties to a case are required to hold an early case conference within 30 days after the filing of an answer by the first answering defendant,[3] "[u]nless the case is in the court annexed arbitration program or short trial program." (Emphasis added.) Once a case conference has been held, NRCP 16.1(c) requires that a case conference report be filed within 30 days from when the conference was held. Failure to hold the case conference within 180 days of the first appearance by a defendant, and file the case conference report with 240 days of the first appearance by a defendant, subjects the plaintiff to the possible dismissal of his or her complaint as to that defendant pursuant to NRCP 16.1(e)(1) and (2), respectively. Also at play in evaluating the issue before us is NAR 4(C), which provides that the NRCP apply "[b]efore a case is submitted or ordered to the program, and after a request for trial de novo is filed" and that "once a case is accepted or remanded into the program, the requirements of N.R.C.P. 16.1 do not apply."[4] In light of the language contained in NRCP 16.1(b)(1) and NAR 4(C) providing that NRCP 16.1's requirements do not apply during the time that a case is actually in the program, whether NRCP 16.1's deadlines and requirements apply and begin to run during the time prior to the grant of an exemption by the arbitration commissioner or the district court for cases not automatically excluded from the program that are ultimately exempted from the program by the grant of an exemption is dependent on a determination as to when a case is actually in the court-annexed arbitration program.

In addressing this issue in the underlying proceedings, the district court determined that appellants' case, which was exempted from the program by the arbitration commissioner on March 29, 2007, had never been submitted, ordered, accepted, or remanded into the program. Based on this conclusion, that the case was never

---

[3]The parties may agree to extend the time for holding the early case conference for up to 90 days by agreement and the district court may grant a continuance of up to 180 days for good cause shown. "Absent compelling and extraordinary circumstances, neither the court nor the parties may extend the time to a day more than 180 days after an appearance is served by the defendant in question." NRCP 16.1(b)(1).

[4]NAR 4(C) further provides that "[a]fter a case is submitted or ordered to the program, and before a request for trial de novo is filed, or until the case is removed from the program," the Nevada Arbitration Rules apply.

actually in the program, the district court held that no suspension of NRCP 16.1's requirements had occurred, and thus, effectively concluded that NRCP 16.1(e)(2)'s 240-day period for filing a case conference report ran, without interruption, from the starting date set forth in that rule. After concluding that appellants had failed to timely file their case conference report within this period, the district court exercised its discretion to dismiss their case, without prejudice, under NRCP 16.1(e)(2). Because we agree with the district court's conclusions in this regard, we affirm its dismissal of appellants' case.[5]

Here, appellants' complaint was not eligible for automatic exemption, and thus, could only avoid arbitration if the arbitration commissioner or district court exempted it from the program. NAR 5(A). Appellants maintain that, until they were exempted from the program, on March 29, 2007, their case was considered to be in the program, and thus, under NRCP 16.1(b)(1) and NAR 4(C) they were not subject to the requirements of NRCP 16.1, including NRCP 16.1(e)(2)'s 240-day period for filing a case conference report. We disagree.

As previously noted, NAR 4(C) provides that the NRCP apply until a case is "submitted or ordered" into the program and that, except as otherwise stated in the rules, NRCP 16.1's requirements do not apply once a case has been "accepted or remanded into the program." NAR 4(C). This language clearly requires some affirmative action or event to take place before a case is actually *in* the court-annexed arbitration program. The Nevada Arbitration Rules do not, however, specifically spell out what events or actions must occur in order for a case to be placed into the program. Accordingly, we take this opportunity to clarify that a case is not actually in the court-annexed arbitration program until it is assigned to an arbitrator under the procedures outlined in NAR 6 or it is ordered or remanded into the program by the district court.[6] Thus, cases not automatically exempted by the initial pleading, but which are

---

[5]In granting respondents' motion to dismiss, the district court incorrectly found that appellants had never filed a case conference report. Appellants, however, did file this document, but did so on November 21, 2007, after NRCP 16.1(e)(2)'s 240-day deadline had expired. The district court also errantly applied the version of NRCP 16.1(e)(2) applicable only to family division and domestic relations proceedings, which calculates the 240-day period from the date the summons and complaint is served. Because appellants' November 21 filing was nonetheless untimely under the correct version of NRCP 16.1(e)(2), which calculates the 240-day period from the date of the first appearance of a defendant, we nonetheless affirm the district court's dismissal order. *See Sengel v. IGT*, 116 Nev. 565, 570, 2 P.3d 258, 261 (2000) (explaining that this court will affirm the district court's decision if it reaches the right result, even if for the wrong reasons).

[6]Examples of when a case may be ordered or remanded into the program by the district court include when the parties agree to submit an otherwise exempt case to the program with the district court's approval in accordance with

ultimately exempted from the program by the arbitrator or the district court under the procedures outlined in NAR 5(A), are not actually in the program during the time period prior to their being exempted from the program.[7] Indeed, unless such cases are subsequently ordered or remanded into the program by the district court for some other reason, they are never actually in the court-annexed arbitration program.[8]

While appellants contend that such a conclusion is inconsistent with NAR 5(A)'s requirement that parties whose cases are not automatically excluded from the program utilizing the procedure set forth in that rule must seek exemption from the program in order to avoid going through the arbitration process and would, in fact, render NAR 5(A) superfluous, we disagree with this assertion. Although cases not automatically excluded from the program by designation on the initial pleading are subject to the program from the moment the initial pleading is filed and, if not exempted by the arbitration commissioner or district court, will ultimately be submitted into the program, such cases are not actually *in* the program until they are assigned to an arbitrator or ordered or remanded into the program by order of the district court.

Contrary to appellants' argument, this conclusion is wholly consistent with NAR 5(A), which sets forth the procedure by which cases not automatically excluded from the program by designation on the initial pleading can avoid being placed into the program by making a request for exemption. Indeed, to conclude that such cases are automatically in the program until they are exempted by the arbitration commissioner or district court would render NAR 4(C)'s language differentiating which sets of rules govern the procedures applicable to a case based on whether the case has been submitted, ordered, accepted, or remanded into the program mere surplusage, and thus, such a conclusion must be rejected.[9] *See Al-*

---

NAR 3(B), and when the district court makes a final determination that a request for exemption from the program should be denied and remands the case into the program after an objection to the arbitration commissioner's resolution of the issue is made under the procedures outlined in NAR 5.

[7]We note that a different conclusion would be necessarily reached if a case was actually assigned to an arbitrator or submitted or remanded into the program by the district court and later exempted from the program by the arbitration commissioner or district court.

[8]This same conclusion applies to cases automatically excluded from the program by designation on the initial pleading. Unless they are later ordered or remanded into the program by the district court, such cases never enter the court-annexed arbitration program.

[9]*See also* NAR 3(D) (allowing parties to cases "submitted or ordered to the program" to agree to be bound by the results of the arbitration); NAR 4(F) (stating that "[o]nce a case is submitted or ordered to the program all parties subsequently joined in the action shall be parties to the arbitration unless dismissed by the district judge to whom the case is assigned").

*bios v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006) (noting, in construing a statute, that when possible this court will construe a statute so that no part of the statute is rendered nugatory or becomes mere surplusage); *see also Marquis & Aurbach v. Dist. Ct.*, 122 Nev. 1147, 1157, 146 P.3d 1130, 1137 (2006) (applying rules of statutory construction to the interpretation of a court rule); *State ex rel. PSC v. District Court*, 94 Nev. 42, 44, 574 P.2d 272, 273 (1978) (implying that the rules of statutory construction apply to the construction of Nevada's Rules of Civil Procedure).

Although the dissent sees the matter differently, our conclusion makes perfect sense in the overall context and design of the two sets of rules, the NRCP and NAR. For cases in the arbitration program, NAR 11 provides for an arbitration-sponsored early case conference equivalent to the NRCP 16.1 conference, to occur "[w]ithin 30 days after the appointment of the arbitrator." Under NAR 6, the commissioner does not assign an arbitrator, triggering the NAR 11 alternative to NRCP 16.1(b)(1)'s early case conference, until he or she decides any exemption request. By design, the arbitration rules provide for exemption requests to be filed (20 days after the defendant's answer, NAR 5(A)) and opposed (5 days after the exemption request is served, NAR 5(B)) *before* the NRCP 16.1(b)(1) early case conference requirements are triggered (30 days after the defendant's answer) should the matter stay in district court. Thus, under the rules, arbitration exemption requests are *known and in most instances determined*, before NRCP 16.1(b)(1)'s 30-day time limit for holding the early case conference runs.[10] For cases that stay in district court, the NRCP 16.1(b)(1) timetable controls. On the other hand, if the case has been accepted into arbitration, NAR 11 applies. Further confirming that the NRCP and NAR were written to work in tandem, NRCP 16.1(b)(1) says that "parties to any case wherein a timely trial de novo request has been filed subsequent to an arbitration, need not hold a *further* in person conference" (emphasis added). If the rules intended to suspend NRCP 16.1(b)(1)'s obligations for cases with pending arbitration exemption requests, it would have been simple to write them to say so, particularly since NRCP 16.1(b)(1) was specifically revised to deal with arbitrations under the NAR, but they were not. Instead, they were written to be read together. Taken together, they confirm the importance of a prompt, mandatory, *early* case conference to occur under NRCP 16.1(b)(1) and on its timetable, unless a case is *in* the arbitration program, in which event NAR 11's version of NRCP 16.1(b)(1) applies.

---

[10]NRCP 16.1(b)(1) permits its 30-day time limit to be extended on stipulation or by motion, which could be invoked if the exemption request has been made, opposed, and remains undecided when the NRCP 16.1(b)(1) obligation would otherwise occur.

Finally, to the extent that appellants attempt to rely on our decision in *Morgan v. Las Vegas Sands, Inc.*, 118 Nev. 315, 43 P.3d 1036 (2002), for the proposition that their case was in the program until it was exempted by the arbitration commissioner, we conclude that their reliance on this case is misplaced. In *Morgan*, which dealt with a case that actually went through the arbitration process because the complaint sought only monetary damages below the jurisdictional amount and then proceeded to trial de novo after arbitration was completed, this court held that NRCP 41(e)'s five-year period for bringing a case to trial was not tolled while cases are in the court-annexed arbitration program and rejected an effort to resurrect the arbitration award and reduce that award to judgment. *Id.* In discussing these issues, the *Morgan* court briefly addressed the court-annexed arbitration rules and procedures, a discussion that appellants present as a purported conclusion that cases not automatically excluded from the program by the initial pleading that are ultimately exempted from the program are in the program until an exemption is granted. The *Morgan* decision, however, contains no such conclusion. In fact, in rejecting Morgan's effort to resurrect the arbitration award, the court specifically noted that the court-annexed arbitration program ''automatically diverts all civil cases that are not exempted from the program *into*'' the program. *Id.* at 322, 43 P.3d at 1040 (emphasis added). This statement demonstrates that the *Morgan* court recognized what we now hold in this opinion—that cases awaiting a ruling on a request for exemption made under NAR 5(A) by the arbitration commissioner or the district court are not actually in the program during the time prior to being exempted from the program. Only when a case is assigned to an arbitrator or is ordered or remanded into the program by the district court is the case actually in the program.

Applying this conclusion to the case at bar, because appellants' case was never assigned to an arbitrator or ordered or remanded into the program, the case was not actually in the court-annexed arbitration program during the time prior to the arbitration commissioner's decision exempting the case from the program. As a result, the portions of NRCP 16.1(b)(1) and NAR 4(C) that exempt cases that *are* in the program from NRCP 16.1's deadlines and requirements during the period that they are actually in the court-annexed arbitration program never applied to appellants' complaint, and appellants were therefore obligated to comply with NRCP 16.1(e)(2)'s requirement that they file a case conference report within 240 days of the first appearance by a defendant.

Here, respondents first appeared in the action when their answer was filed on January 10, 2007. Appellants, however, did not file their case conference report until November 21, 2007, which was more than 300 days after respondents first appeared in the action

by filing their answer to the complaint. As a result, we find no abuse of discretion in the district court's dismissal of appellants' complaint, without prejudice, based on appellants' failure to timely file their case conference report within NRCP 16.1(e)(2)'s 240-day period, and we therefore affirm the district court's dismissal order.[11] *Arnold v. Kip*, 123 Nev. 410, 168 P.3d 1050 (2007).

PARRAGUIRRE, C.J., and HARDESTY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

CHERRY, J., dissenting:

The majority adopts the position that during the period that a newly filed case is awaiting exemption from the court-annexed arbitration program, the case is subject to, but not actually in, the court-annexed arbitration program. This conclusion makes little sense, and it creates a situation in which a party is required to opt out of a program that the party's case is supposedly not even in. Accordingly, I must dissent.

The stated purpose of the court-annexed arbitration program and its associated rules ''is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters.'' NAR 2(A). To that end, NAR 5 plainly outlines an opt-out process in which a case is deemed to be in the court-annexed arbitration program until a party's request to be released from the program is approved by the arbitration commissioner or the district court.

While the majority seems to conclude that its approach to this issue is necessary to harmonize NAR 5's exemption-procedure language with the language contained in NAR 4(C) (setting forth which rules govern the procedures applicable to a case based on whether the case has been ''submitted or ordered to'' or ''accepted or remanded into'' the program), I strongly disagree that such an approach is practicable or necessary.[1]

It is well established that this court will interpret statutes in harmony, so as to render no part of a statute mere surplusage. *Albios*

---

[11]Because appellants' sole argument on appeal is that they complied with NRCP 16.1(e)(2)'s case conference report filing requirement and they do not otherwise argue that the district court failed to consider or improperly applied the factors for district court consideration in evaluating motions to dismiss based on NRCP 16.1(e)(2), we need not consider whether the district court properly applied those factors in dismissing the complaint.

[1]Similar ''submitted or ordered to'' language also appears in NAR 3(D) (allowing ''[p]arties to cases submitted or ordered to the program'' to agree to be bound by the results of the arbitration) and NAR 4(F) (stating that ''[o]nce a case is submitted or ordered to the program all parties subsequently joined in the action shall be parties to the arbitration unless dismissed by the district judge to whom the case is assigned'').

*v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006). Here, achieving a uniform construction is simply not possible. As the majority points out, "[t]he Nevada Arbitration Rules do not . . . specifically spell out what events or actions must occur in order for a case to be placed into the program." Majority opinion *ante* at 514. Thus, by their own admission, the majority seeks to salvage language that is neither explained nor given effect by the rules. In so doing, the majority merely glosses over the readily apparent conflict between requiring that cases be submitted, ordered, or remanded into the program in order to actually be in the program and the opt-out procedure embodied in NAR 5. As a consequence, the majority allows this otherwise unexplained "submitted or ordered to" or "accepted or remanded into" language to control the resolution of this issue, despite the clear language of NAR 5 that plainly anticipates the use of an opt-out approach for cases that are not automatically exempted on the initial pleading.

Confusingly, the majority asserts that their conclusion regarding when cases are deemed to be in or out of the arbitration program somehow "makes perfect sense in the overall context and design" of the NRCP and the NAR, based on the fact that NRCP 16.1(b)(1) sets forth discovery conference deadlines for cases not in the program while NAR 11 sets discovery conference deadlines for program cases. Majority opinion *ante* at 516. A determination as to which rule—NRCP 16.1(b)(1) or NAR 11—applies to a case, however, is predicated on whether a case is actually in the program at a particular time. Given that the purpose of this opinion is to set forth when a case is or is not deemed to be in the program, the fact that the NRCP and NAR set forth different discovery conference deadlines based on whether a case is or is not in the program provides no support for the majority's position regarding when cases are actually in the program. Indeed, NRCP 16.1(b)(1) and NAR 11 would likewise govern discovery conference deadlines for cases, depending on whether they are or are not in the program, under the position I would adopt—that a case is in the program until an exemption is granted. If the exemption is denied, the case would remain in the program and the deadlines set forth in NAR 11 would control. If a case is exempted from the program, then the NRCP 16.1(b)(1) deadlines would begin to run from the date of exemption.

This last point is the key difference between my view and the tack taken by the majority. Under the majority's position, when a case subject to the program is not automatically exempted, the plaintiff is forced to juggle two sets of competing deadlines. Specifically, the plaintiff must file his or her request for exemption within 20 days of the date the defendant's answer is filed (NAR

5(A)), then wait out the 5-day opposition period (NAR 5(B)) and however long it takes the arbitration commissioner to resolve the exemption request. A party unhappy with the commissioner's decision has an additional five days to object to that decision (NAR 5(D)), after which the parties must wait for the district court to finally resolve the issue. NAR 5(E). Meanwhile, a plaintiff who has complied with each of these deadlines must watch the clock continue to run on NRCP 16.1(b)(1)'s 30-day early case conference deadline. Given the heavy case load burdening this state's district courts, it would be extremely difficult for a plaintiff to have his or her exemption request finally determined prior to the expiration of the initial 30-day NRCP 16.1(b)(1) period.

The end result of the majority's approach is that a plaintiff who complies with each of the exemption deadlines will, in most cases, have to request an extension of the NRCP 16.1(b)(1) deadline in order to comply with the requirements of that rule and avoid having his or her case rule-booked out of the district court on procedural grounds. In stark contrast, if cases subject to the arbitration program are deemed to be in the program until an exemption is granted, the NRCP 16.1 deadlines would not begin to run until the case is exempted and the plaintiff would have the full 30-day window to comply with the requirements of NRCP 16.1(b)(1), which, in many cases, would obviate the need to seek an extension of the NRCP 16.1(b)(1) period.

In light of these considerations, I would apply the plain language of NAR 5's clearly explained opt-out process, rather than attempt to breathe life into NAR 4(C)'s unexplained "submitted or ordered to" or "accepted or remanded into" language. As a result, I would conclude that appellants' case was in the program until it was exempted on March 29, 2007, and that, as a result, considering NRCP 16.1(b)(1) and NAR 4(C), NRCP 16.1(e)(2)'s 240-day time period did not start to run until the date of exemption—March 29, 2007. Using this approach, because appellants filed a case conference report on November 21, 2007, which is within the 240-day period, I would conclude that they complied with NRCP 16.1(e)(2)'s requirements, so that dismissal on that basis was an abuse of discretion. *See Arnold v. Kip*, 123 Nev. 410, 414, 168 P.3d 1050, 1052 (2007) (setting forth this court's standard of review for NRCP 16.1(e)(2) dismissals). Given the confusing and contradictory language used in the Nevada Arbitration Rules and this court's oft stated preference for deciding cases on the merits, *see, e.g.*, *Hansen v. Universal Health Servs.*, 112 Nev. 1245, 1247-48, 924 P.2d 1345, 1346 (1996) (noting this court's preference that cases be decided on the merits); *Hotel Last Frontier v. Frontier Prop.*, 79 Nev. 150, 155, 380 P.2d 293, 295 (1963) (same), such a conclusion represents the only just and equitable resolution of this matter.

Putting aside the merits of this particular case, in light of the confusing and contradictory language contained in the Nevada Arbitration Rules at issue in this appeal, I believe that the majority misses the bigger picture. Rather than correct the clear inconsistencies with the current incarnation of these rules through the rule-amendment process, the majority superficially attempts to harmonize rules that, in my view, simply cannot be harmonized. This effort is unnecessary, as an amendment to the rules would allow the court to address these issues in a clear, logical, and consistent fashion, so as to provide appropriate guidance to litigants and the district courts, rather than creating a makeshift solution that is inconsistent with the language and intent of one of the very rules the majority seeks to interpret and apply. Unfortunately, the majority's solution to dealing with the admittedly contradictory language in the Nevada Arbitration Rules merely adds confusion and complexity to the process. Accordingly, I dissent.